BRUCE A. WOODLING and AIMEE L. WOODLING, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Woodling v. Commissioner
Docket No. 2810-75.
United States Tax Court
T.C. Memo 1976-391; 1976 Tax Ct. Memo LEXIS 11; 35 T.C.M. (CCH) 1766; T.C.M. (RIA) 760391; December 23, 1976, Filed Bruce A. Woodling, pro se. Stephen B. Zorick, Jr., for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined a deficiency of $495.49 in petitioners' Federal income tax for the year 1972. The issue presented is whether a portion of the stipend received by petitioner, Bruce A. Woodling, as a medical intern is excludable from gross income as a scholarship or fellowship grant under section 117(a)(1). [1]
FINDINGS OF FACT Some facts were stipulated and are so found. Petitioners are husband and wife who filed a joint Federal income tax return for the year in issue. They resided in Ventura, California, at the time their petition in this matter was *12 filed. Petitioner Bruce A. Woodling (hereinafter referred to as petitioner) was graduated from the University of Southern California School of Medicine in 1972. Upon graduation, he participated in the National Intern and Resident Matching Program sponsored by the Council on Medical Education of the American Medical Association. Through this program, he was accepted as an intern in obstetrics and gynecology at the Los Angeles County - U.S.C. Medical Center (hereinafter Medical Center). The Medical Center is funded by the taxpayers of Los Angeles County for the care of the indigent sick and injured, but will accept any patient in need of emergency treatment. In 1972, the Medical Center admitted approximately 100,000 patients for in-hospital care and treated nearly 1,000,000 patients through its outpatient clinics. The Medical Center employs some 1,200 doctors in its hospital facility, including 200 interns and 500 residents. Upon his entry into the Medical Center's intern program, petitioner was presented with materials indicating his prospective departmental assignments and daily work schedules. From March 29, 1972, through June 20, 1973, petitioner rotated among the hospital's *13 various departments, remaining in each for a one-month period. During this rotation period, petitioner was assigned patients to whom he had secondary and sometimes direct responsibility for their diagnoses and treatment. In this regard, petitioner made daily rounds and wrote progress reports, later discussing the results of his findings with his senior colleagues. During his tenure in the department of obstetrics, petitioner delivered unassisted nearly 200 babies, including 20 by Caesarian section. While serving in the gynecology department, petitioner assisted the resident surgeon in several operations. Petitioner signed a standard employment contract of Los Angeles County. As a county employee, petitioner was forbidden to charge patients a fee or accept remuneration other than the salary provided by the County. While in the service of the County he was classified as a temporary employee and was paid out of the Los Angeles County general fund. Petitioner was provided a starting salary of $958 per month, which was subject to graduated step increases as he gained experience. He was permitted leave time of twenty days per year. Upon termination of employment, petitioner *14 was entitled to a cash payment for unconsumed leave time, up to 10 days. Apart from salary, the hospital provided its interns the following fringe benefits without charge: meals while on duty, uniforms, laundry service, parking, malpractice insurance, medical insurance, and life insurance. Additionally, the Medical Center provided extensive recreational facilities for use by its professional staff. In accordance with petitioner's contract of employment, Los Angeles County paid him $8,075.71 during 1972 which it treated in its entirety as wages subject to Federal income tax withholding. On their Federal income tax return for 1972, petitioners adjusted their income so as to exclude $2,700 as a nontaxable "post graduate stipend." OPINION We are to decide whether any portion of the payments received by petitioner is excludable from gross income as a fellowship grant under section 117(a)(1). From the many cases decided in this frequently litigated area, at least one general principle has emerged: Payments received in return for services rendered are neither scholarships nor fellowship grants. Bingler v. Johnson,394 U.S. 741 (1969); Stephen L. Zolnay,49 T.C. 389 (1968); *15 Sec. 1.117-4(c), Income Tax Regs.
In support of his position, petitioner makes many of the usual arguments. Apart from these contentions, petitioner appears to be saying, as we understand it, that the hospital facility in which he worked was not primarily concerned with patient care; rather, he was assigned to a hospital, or that portion of a hospital, the primary objective of which was the teaching and training of interns and residents. Thus, patients of this "teaching" hospital received petitioner's diagnoses and treatments only secondarily, as an incident of his medical training. As a candidate in such an institution, he concludes, the stipend received by him is more properly viewed as a fellowship grant. This suggested line of reasoning, even if pursued, would not benefit petitioner's position. It fails to perceive that the pivotal consideration is the purpose behind the hospital facility's payment to the intern taxpayer, rather than the primary purpose of the facility itself. Hembree v. United States,464 F.2d 1262 (4th Cir. 1972). Despite the Medical Center's systematic approach and rigid adherence to teaching principles, the fact remains that the payments *16 involved possess all the attributes of those made in return for services. Petitioner was able to apply valuable skills for the hospital's benefit, including the unassisted delivery of some 200 babies. Petitioner maintained a regular daily work schedule and received a stipend from which Federal income tax had been withheld. Along with the stipend, he received many valuable fringe benefits from the hospital. Although petitioner was an exceptional medical graduate whom the Medical Center was no doubt pleased to have, once in its employ he received no special payment or bonus because of his qualifications. Nor was his financial position taken into account in determining the amount of his stipend. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended.↩